O P I N I O N
Defendant-appellant Mark Weaver appeals from a finding that he is a sexual predator. Weaver contends that the trial court erred by making the finding without an explanation of its reasoning. Weaver also contends that there is insufficient evidence in the record to support the finding, and that the finding is against the manifest weight of the evidence.
We conclude that although a "model" sexual predator hearing, as laid out in State v. Eppinger[1] would include an explanation by the trial court of its reasoning in making a sexual predator finding, its failure to do so does not constitute reversible error. We further conclude that there is evidence in the record to support the trial court's finding, and that the finding is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
In 1996, when Weaver was 16 years old, he allegedly performed cunnilingus on a five-year-old neighbor girl, and attempted to have vaginal intercourse with her, before being discovered and interrupted. Weaver was bound over for trial as an adult on charges of Rape, by Force, of a Child Under the Age of Thirteen Years, Attempted Rape, by Force, of a Child Under the Age of Thirteen Years, Gross Sexual Imposition Against a Child Under the Age of Thirteen Years, and Vandalism. Pursuant to a plea bargain, Weaver pled no contest to charges of Rape and Attempted Rape, without force, and the charges of Gross Sexual Imposition and Vandalism were dismissed. Weaver was sentenced to concurrent prison terms of eight to twenty-five years for Rape, and six to fifteen years for Attempted Rape.
Four years later, in 2000, Weaver appeared for an evidentiary hearing on the issue of his sexual offender classification. One witness testified on behalf of the State, and 11 exhibits were admitted. Weaver did not present any testimony on his own behalf. At the conclusion of the hearing, the trial court found, without explanation, that Weaver was a sexual predator. From the order finding him to be a sexual predator, Weaver appeals.
 II
Weaver's First Assignment of Error is as follows:
 THE EVIDENCE WAS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE "BY CLEAR AND CONVINCING EVIDENCE" THAT DEFENDANT-APPELLANT IS "LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES."
 A
Although it is not stated in this assignment of error, Weaver argues, in connection with this assignment of error, that the trial court erred by failing to discuss, on the record, the particular evidence and factors upon which it relied in making its determination that he is a sexual predator. We agree with the factual predicate for this proposition — the trial court did fail to discuss on the record the particular evidence and factors upon which it relied.
Justice Lundberg Stratton, in her opinion for the court in State v.Eppinger, supra, laid out her view of a model sexual offender classification hearing. Toward the end of this discussion, she wrote the following:
 Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism. [citations omitted.]
We are cognizant of our statement in State v. Cook, supra,[2] that R.C. 2950.09 does not require the court to list all criteria, but only to consider all relevant factors in making its findings. [citations omitted.] However, we also noted in Cook that the sexual offender classification hearing in that case was not a model hearing. [citation omitted]. Therefore, we are suggesting standards for the trial courts that will aid the appellate courts in reviewing the evidence on appeal and ensure a fair and complete hearing for the offender.
Neither the syllabus nor the text of the opinion in State v. Eppinger,supra, purports to overrule State v. Cook, supra, in which, as Justice Lundberg Stratton's opinion notes, a sexual predator finding made at a sexual offender classification hearing that was not a model hearing was nevertheless upheld. Furthermore, only two other justices concurred in that part of Justice Lundberg Stratton's opinion in which she laid out standards for a model sexual offender classification hearing. Consequently, we conclude that a trial court's failure to hold a model sexual offender classification hearing, as laid out in Justice Lundberg Stratton's opinion, does not, in and of itself, constitute reversible error.
In the case before us, there is no suggestion, either in Weaver's brief, or in the record, which we have reviewed, that he was in any way precluded from presenting testimony and other evidence at the hearing, or otherwise in making a record at his sexual offender classification hearing. Accordingly, we conclude that although a model sexual offender classification hearing would include a discussion on the record of the particular evidence and factors upon which the trial court relied in making its finding, the trial court's failure to do so in the case before us does not constitute reversible error.
 B
Weaver argues that the finding that he is a sexual predator is not supported by evidence in the record. That evidence includes the pre-sentence investigation report compiled for purposes of the sentencing hearing in this case. That report reflects that he was adjudicated to have committed, as a juvenile, the offenses of Theft, Escape, Trespassing-Burglary, Assault and Criminal Damaging in 1992, and the offenses of Disorderly Conduct, Assault, Disorderly Conduct, Criminal Damaging, Assault, and Resisting Arrest in 1994. The report also indicated that Weaver had additional arrests that were "adjusted," without any official adjudication, for the following offenses: Arson, Criminal Damaging (over $250), Probation Violation, Aggravated Assault, Shoplifting, and Assault. These arrests took place between 1990, when Weaver was just ten years old, and 1994.
The record also reflects the following disciplinary offenses for which Weaver was disciplined while incarcerated pursuant to the sentence in this case: (1) "Gave the officer the finger stated "get the fuck off me;" (2) fighting with another inmate; (3) threatened to kill another inmate; (4) sucking another inmate's penis; (5) disobeyed food service worker by not returning to work, also assaulted staff, "when crate he kicked hit the staff member on the foot"; (6) was receiving oral sex from another inmate, also called officer "bitch." These disciplinary violations occurred in 1997, 1998 and 2000. The same report also reflects the following disciplinary violation in 1998: refused to work in food service and told Mr. Clever he could "stick it up his ass."
The record also includes a number of psychological evaluations. One of these was the psychological report of Dr. Laura Fujimura, rendered in 1996, apparently in connection with proceedings in the Montgomery County Juvenile Court on the charge with respect to which Weaver was ultimately convicted. Weaver was 16 years old at the time of Dr. Fujimura's assessment. Weaver denied that he had committed the offense. The following paragraphs in Dr. Fujimura's report are worth setting out in full:
 Based on the results of the personality testing, Mark
may be described as an emotional [sic] detached and immature individual who seemingly has a strong, internalized endorsement of antisocial and blatantly aggressive behavior. His actions characteristically tend to be impulsive, unpredictable, as well as antagonistic in nature. This client appears to be at high risk of turning to alcohol and/or other drugs in an effort to anesthetize his feelings of anxiety, loneliness, anxiety [sic], dependency, and hostility.
 Mark generally resolves social or personal problems in ways that show a disregard for social customs or rules. Unfortunately, he also generally considers his life to be comfortable and, therefore, sees little reason to change his behavior. He will tend to deny having any problems or will project blame to external sources.
 After reviewing all of the information available to this examiner, there is sufficient evidence to indicate that Mark has displayed a chronic pattern of behavioral difficulties, including stealing, being physically assaultive, and engaging in other socially inappropriate actions. In spite of attempts offered through the Mohave County [Arizona] Juvenile Court System with which Mark was involved for several years, his acting-out behaviors have continued to escalate. He seems to have almost no genuine emotional attachment to others or respect for authority figures. Although, [sic] this examiner believes that Mark is basically an immature individual who is emotionally needy, those factors are seemingly overridden when considering other factors such as his antisocial behaviors, physical assaultiveness, lack of regard for others, and his antagonistic as well as rebellious attitude toward others, even those attempting to assist him.
 It is this examiner's opinion that Mark displays characteristics associated with an Attachment Disorder, Conduct Disorder, and an Attention-Deficit/Hyperactivity Disorder. With this combination of characteristics, Mark will likely be extremely resistant to any type of therapeutic service unless stringent, external consequences are attached to it. Even under that scenario, Mark will likely only comply superficially at best for a brief amount of time before returning to his oppositional stance. It is this examiner's opinion that any type of rehabilitative effort offered to Mark needs to address areas including social skills, victim empathy, and anger reduction. As long as he continues to lack a social conscience, it is highly likely that he will represent a significant threat to himself as well as others in the community.
(Emphasis added.)
Another psychological evaluation was made in 1996, by Dr. Susan Perry Dyer, in connection with Weaver's sentencing in this case. Weaver was 16 years old at the time of this assessment. According to Dr. Dyer, Weaver denied his guilt, contending that he had been framed. Her observations under the hearing "Discussion" are worth setting forth in full:
 After review of all available documentation, it appears that Mark Weaver is an immature hyperactive teenager who has a long history of antisocial acting-out culminating in the diagnosis of Conduct Disorder. Mark seems proud of his past violence, including violence toward his mother, gang involvement, school fights, etc. He also boasts of his drug and alcohol abuse. He describes himself as "crazy" and is quick to use that description when he believes it will suit his own purposes. For example, he wishes to remain at the Montgomery County Jail or be "sent to a funny farm" because he's afraid of being raped or killed in prison. In short, he has displayed a chronic pattern of acting-out, behavioral problems and antisocial endeavors.
 Family life was apparently chaotic and Mark is an extremely emotionally needy individual who has not developed the ability to have warm, emotional attachments to others. As a result, it is easy for him to engage in violence and acting-out toward others.
 Noteworthy is the fact that extensive treatment efforts in the past have been unsuccessful to modulate Mark's behavior and facilitate a more mature, prosocial development.
(Emphasis added.)
Also in the record is a report of a forensic evaluation by Dr. Barbra Bergman, made in late June and early July, 2000, in connection with the sexual offender classification issue. At this time, Weaver was 20 years old, and had been in prison about four years. Weaver was still in denial, asserting that he had "blanked-out" after the five-year-old girl he allegedly raped came into the bedroom with him. Dr. Bergman notes that Weaver could not explain the reason for his "blanking-out." Dr. Bergman made the following observations under the "Discussion" heading of her report:
 In addition to unmanageable behavior in school, Mr. Weaver began to engage in antisocial behavior at 10 years of age, when he became the "best shoplifter in town," according to him. His first charge as a juvenile was at 11 years of age for shoplifting. He was involved in two gangs at the age of 13 years and engaged in a great deal of violence with rival gangs. He began abusing alcohol daily at age of 14 years and also used marijuana regularly. He reported to the Montgomery County Juvenile Court Social Worker that he was selling marijuana to children in the trailer court prior to his arrest.
 While Mr. Weaver was on juvenile probation in Arizona, a number of interventions were done in order to impact Mr. Weaver's maladjusted behavior: out-patient counseling, intensive daily counseling, medications, and regular and intensive probation. His Parole Officer reported that nothing was effective.
 In her psychological report for the juvenile bind over evaluation, Laura E. Fujimura, the Montgomery County Juvenile Court Psychologist, described Mr. Weaver as "an emotionally detached and immature individual, who seemingly has a strong, internalized endorsement of antisocial and blatantly aggressive behavior." She also noted that he sees no reason to change and that he denies problems and projects blame to external sources. Present assessment indicates that this is an accurate description of Mr. Weaver.
 The present assessment indicates that, by virtue of clinical impressions, behavioral observations, and history, Mr. Weaver appears to be an individual characterized by Antisocial Personality Disorder.
(Emphasis added.)
In order to find a sexual offender to be a sexual predator, the trial court must find, by clear and convincing evidence, that the offender is likely to commit another sexually oriented offense in the future.[3]
Although the General Assembly has commended certain factors for the trial court's consideration in making this finding of fact,[4] these factors are not, for the most part, self-explanatory, and the trial court is not limited to the factors listed in the statute.[5]
In determining whether an individual is likely to commit another sexually oriented offense, a trial judge must consider the evidence that has been submitted on the issue, and then must use the judge's common sense, based on the judge's training and experience, to make a difficult predictive finding — whether the offender is likely, at any time in the future, to commit another sexually oriented offense.
In the case before us, we conclude that there is evidence in the record to support a sexual predator finding. The evidence portrays a young man who has demonstrated no interest in keeping his conduct within the limits of the criminal law. Although he has only committed criminal sex offenses in the one instance resulting in the conviction in this case, his behavior while in prison includes two violations involving sexual conduct. These may well have been consensual, as Weaver alleges, but they nevertheless indicate that Weaver does not distinguish sexual behavior from other kinds of behavior when it comes to his remarkable disinterest in complying with society's rules. To us, the conclusion appears inescapable, based upon the evidence in the record before us, that Weaver will continue to disregard criminal laws, and that his repertoire of criminal behavior will include sexual offenses.
In short, there is evidence in the record to support the sexual predator finding, and Weaver's First Assignment of Error is overruled.
 III
Weaver's Second Assignment of Error is as follows:
 THE TRIAL COURT'S FINDING THAT DEFENDANT-APPELLANT IS A SEXUAL PREDATOR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
For the reasons set forth in Part II, above, we conclude that the trial court's finding that Weaver is a sexual predator is not against the manifest weight of the evidence. To the contrary, the evidence overwhelmingly suggests that Weaver is likely to commit sexually oriented offenses, along with other criminal offenses, in the future. He has shown no interest in conforming his behavior to meet the requirements of the criminal law.
Weaver's Second Assignment of Error is overruled.
 IV
Both of Weaver's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 _______ FAIN, J.
BROGAN and GRADY, JJ., concur.
[1] (2001), 91 Ohio St.3d 158.
[2] (1998), 83 Ohio St.3d 404.
[3] R.C. 2950.01(E) and 2950.09(A)(3).
[4] R.C. 2950.09(B)(2).
[5] R.C. 2950.09(B)(2)(j).